*168 Chief Justice Roberts
delivered the opinion of the Court.
The Hague Convention on the Civil Aspects of International Child Abduction generally requires courts in the United States to order children returned to their countries of habitual residence, if the courts find that the children have been wrongfully removed to or retained in the United States. The question is whether, after a child is returned pursuant to such an order, any appeal of the order is moot.
I
A
The Hague Conference on Private International Law adopted the Hague Convention on the Civil Aspects of International Child Abduction in 1980. T. I. A. S. No. 11670, S. Treaty Doc. No. 99-11. In 1988, the United States ratified the treaty and passed implementing legislation, known as the International Child Abduction Remedies Act (ICARA), 102 Stat. 437, 42 U. S. C. § 11601 et seq. See generally Abbott v. Abbott, 560 U. S. 1, 8-9 (2010).
The Convention seeks “to secure the prompt return of children wrongfully removed to or retained in any Contracting State” and “to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.” Art. 1, S. Treaty Doc. No. 99-11, at 7. Article 3 of the Convention provides that the “removal or the retention of a child is to be considered wrongful” when “it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention” and “at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.” Ibid.
*169 Article 12 then states:
“Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the > child forthwith.” Id., at 9.
There are several exceptions to that command. Return is not required if the parent seeking it was not exercising custody rights at the time of removal or had consented to removal, if there is a “grave risk” that return will result in harm, if the child is mature and objects to return, or if return would conflict with fundamental principles of freedom and human rights in the state from which return is requested. Arts. 13, 20, id., at 10, 11. Finally, the Convention directs Contracting States to “designate a Central Authority to discharge the duties which are imposed by the Convention.” Art. 6, id., at 8; see also Art. 7, ibid.
Congress established procedures for implementing the Convention in ICARA. See 42 U. S. C. § 11601(b)(1). ICARA grants federal and state courts concurrent jurisdiction over actions arising under the Convention, § 11603(a), and directs them to “decide the case in accordance with the Convention,” § 11603(d). If those courts find children to have been wrongfully removed or retained, the children “are to be promptly returned.” § 11601(a)(4). ICARA also provides that courts ordering children returned generally must require defendants to pay various expenses incurred by plaintiffs, including court costs, légal fees, and transportation costs associated with the return of the children. § 11607(b)(3). ICARA instructs the President to designate the U. S. Central Authority, § 11606(a), and the President has designated the Office of Children’s Issues in the *170 State Department’s Bureau of Consular Affairs, 22 CFR §94.2 (2012).
Eighty-nine nations are party to the Convention as of this writing. Hague Conference on Private Int’l Law, Status , Table, Convention of 25 October 1980 on the Civil Aspects of International Child Abduction, http://www.hcch.net (as visited Feb. 15, 2013, and available in Clerk of Court’s case file). In the 2009 fiscal year, 324 children removed to or retained in other countries were returned to the United States under the Convention, while 154 children removed to or retained in the United States were returned to their countries of habitual residence. Dept, of State, Report on Compliance with the Hague Convention on the Civil Aspects of International Child Abduction 6 (2010).
B
Petitioner Jeffrey Lee Chafin is a citizen of the United States and a sergeant first class in the U. S. Army. While stationed in Germany in 2006, he married respondent Lynne Hales Chafin, a citizen of the United Kingdom. Their daughter E. C. was born the following year.
Later in 2007, Mr. Chafin was deployed to Afghanistan, and Ms. Chafin took E. C. to Scotland. Mr. Chafin was eventually transferred to Huntsville, Alabama, and in February 2010, Ms. Chafin traveled to Alabama with E. C. Soon thereafter, however, Mr. Chafin filed for divorce and for child custody in Alabama state court. Toward the end of the year, Ms. Chafin was arrested for domestic violence, an incident that alerted U. S. Citizenship and Immigration Services to the fact that she had overstayed her visa. She was deported in February 2011, and E. C. remained in Mr. Chafin’s care for several more months.
In May 2011, Ms. Chafin initiated this case in the U. S. District Court for the Northern District of Alabama. She filed a petition under the Convention and ICARA seeking an order for E. C.’s return to Scotland. On October 11 and 12, 2011, the District Court held a bench trial. Upon the close *171 of arguments, the court ruled in favor of Ms. Chafin, concluding that E. C.’s country of habitual residence was Scotland and granting the petition for return. Mr. Chafin immediately moved for a stay pending appeal, but the court denied his request. Within hours, Ms. Chafin left the country with E. C., headed for Scotland. By December 2011, she had initiated custody proceedings there. The Scottish court soon granted her interim custody and a preliminary injunction, prohibiting Mr. Chafin from removing E. C. from Scotland. In the meantime, Mr. Chafin had appealed the District Court order to the Court of Appeals for the Eleventh Circuit.
In February 2012, the Eleventh Circuit dismissed Mr. Chafin’s appeal as moot in a one-paragraph order, citing Bekier v. Bekier, 248 F. 3d 1051 (2001). App. to Pet. for Cert. 1-2. In Bekier, the Eleventh Circuit had concluded that an appeal of a Convention return order was moot when the child had been returned to the foreign country, because the court “became powerless” to grant relief. 248 F. 3d, at 1055. In accordance with Bekier, the Court of Appeals remanded this case to the District Court with instructions to dismiss the suit as moot and vacate its order.
On remand, the District Court did so, and also ordered Mr. Chafin to pay Ms. Chafin over $94,000 in court costs, attorney’s fees, and travel expenses. Meanwhile, the Alabama state court had dismissed the child custody proceeding initiated by Mr. Chafin for lack of jurisdiction. The Alabama Court of Civil Appeals affirmed, relying in part on the U. S. District Court’s finding that the child’s habitual residence was not Alabama, but Scotland.
We granted certiorari to review' the judgment of the Court of Appeals for the Eleventh Circuit. 567 U. S. 960 (2012).
II
Article III of the Constitution restricts the power of federal courts to “Cases” and “Controversies.” Accordingly, *172 “[t]o invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury-traceable to the defendant and likely to be redressed by a favorable judicial decision.” Lewis v. Continental Bank Corp., 494 U. S. 472, 477 (1990). Federal courts may not “decide questions that cannot affect the rights of litigants in the case before them” or give “opinion[s] advising what the law would be upon a hypothetical state of facts.” Ibid. (quoting North Carolina v. Rice, 404 U. S. 244, 246 (1971) (per curiam); internal quotation marks omitted). The “ease-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate.” Lewis, 494 U. S., at 477. “[I]t is not enough that a dispute was very much alive when suit was filed”; the parties must “continue to have a ‘personal stake’ ” in the ultimate disposition of the lawsuit. Id., at 477-478 (quoting Los Angeles v. Lyons, 461 U. S. 95, 101 (1983); some internal quotation marks omitted).
There is thus no case or controversy, and a suit becomes moot, “when the issues presented are no longer ‘live’ or the parties lack a legally cognizable interest in the outcome.” Already, LLC v. Nike, Inc., ante, at 91 (quoting Murphy v Hunt, 455 U. S. 478, 481 (1982) (per curiam); some internal quotation marks omitted). But a case “becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.” Knox v. Service Employees, 567 U. S. 298, 307 (2012) (internal quotation marks omitted); see also Church of Scientology of Cal. v. United States, 506 U. S. 9, 12 (1992) (“if an event occurs while a case is pending on appeal that makes it impossible for the court to grant ‘any effectual relief whatever’ to a prevailing party, the appeal must be dismissed” (quoting Mills v. Green, 159 U. S. 651, 653 (1895))). “As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.” Knox, supra, at 307-308 (internal quotation marks and brackets omitted).
*173 III
This dispute is still very much alive. Mr. Chafin continues to contend that his daughter’s country of habitual residence is the United States, while Ms. Chafin maintains that E. C.’s home is in Scotland. Mr. Chafin also argues that even if E. C.’s habitual residence was Scotland, she should not have been returned because the Convention’s defenses to return apply. Mr. Chafin seeks custody of E. C., and wants to pursue that relief in the United States, while Ms. Chafin is pursuing that right for herself in Scotland. And Mr. Chafin wants the orders that he pay Ms. Chafin over $94,000 vacated, while Ms. Chafin asserts the money is rightfully owed.
On many levels, the Chafins continue to vigorously contest the question of where their daughter will be raised. This is not a case where a decision would address “a hypothetical state of facts.” Lewis, supra, at 477 (quoting Rice, supra, at 246; internal quotation marks omitted). And there is not the slightest doubt that there continues to exist between the parties “that concrete adverseness which sharpens the presentation of issues.” Camreta v. Greene, 563 U. S. 692, 701 (2011) (quoting Lyons, supra, at 101; internal quotation marks omitted).
A
At this point in the ongoing dispute, Mr. Chafin seeks reversal of the District Court determination that E. C.’s habitual residence was Scotland and, if that determination is reversed, an order that E. C. be returned to the United States (or “re-return,” as the parties have put it). In short, Mr. Chafin is asking for typical appellate relief: that the Court of Appeals reverse the District Court and that the District Court undo what it has done. See Arkadelphia Milling Co. v. St. Louis Southwestern R. Co., 249 U. S. 134, 145-146 (1919); Northwestern Fuel Co. v. Brock, 139 U. S. 216, 219 (1891) (“Jurisdiction to correct what had been wrongfully done must remain with the court so long as the *174 parties and the case are properly before it, either in the first instance or when remanded to it by an appellate tribunal”). The question is whether such relief would be effectual in this case.
Ms. Chafin argues that this case is moot because the District Court lacks the authority to issue a re-return order either under the Convention or pursuant to its inherent equitable powers. But that argument—which goes to the meaning of the Convention and the legal availability of a certain kind of relief—confuses mootness with the merits. In Powell v. McCormack, 395 U. S. 486 (1969), this Court held that a claim for backpay saved the case from mootness, even though the defendants argued that the backpay claim had been brought in the wrong court and therefore could not result in relief. As the Court explained, “this argument . . . confuses mootness with whether [the plaintiff] has established a right to recover ..., a question which it is inappropriate to treat at this stage of the litigation.” Id., at 500. Mr. Chafin’s claim for re-return—under the Convention itself or according to general equitable principles—cannot be dismissed as so implausible that it is insufficient to preserve jurisdiction, see Steel Co. v. Citizens for Better Environment, 523 U. S. 83, 89 (1998), and his prospects of success are therefore not pertinent to the mootness inquiry.
As to the effectiveness of any relief, Ms. Chafin asserts that even if the habitual residence ruling were reversed and the District Court were to issue a re-return order, that relief would be ineffectual because Scotland would simply ignore it.[1] But even if Scotland were to ignore a U. S. re-return *175 order, or decline to assist in enforcing it, this case would not be moot. The U. S. courts continue to have personal jurisdiction over Ms. Chafin, may command her to take action even outside the United States, and may back up any such command with sanctions. See Steele v. Bulova Watch Co., 344 U. S. 280, 289 (1952); cf. Leman v. Krentler-Arnold Hinge Last Co., 284 U. S. 448, 451-452 (1932). No law of physics prevents E. C.’s return from Scotland, see Fawcett v. McRoberts, 326 F. 3d 491, 496 (CA4 2003), abrogated on other grounds, Abbott v. Abbott, 560 U. S. 1 (2010), and Ms. Chafin might decide to comply with an order against her and return E. C. to the United States, see, e. g., Larbie v. Larbie, 690 F. 3d 295, 303-304 (CA5 2012) (mother who had taken child to United Kingdom complied with Texas court sanctions order and order to return child to United States for trial), cert, pending, No. 12-304.[2] After all, the consequence of compliance presumably would not be relinquishment of custody rights, but simply custody proceedings in a different forum.
Enforcement of the order may be uncertain if Ms. Chafin chooses to defy it, but such uncertainty does not typically render cases moot. Courts often adjudicate disputes where the practical impact of any decision is not assured. For example, courts issue default judgments against defendants who failed to appear or participate in the proceedings and therefore seem less likely to comply. See Fed. Rule Civ. Proc. 55. Similarly, the fact that a defendant is insolvent *176 does not moot a claim for damages. See 13C C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3583.3, p. 3 (3d ed. 2008) (cases not moot “even though the defendant does not seem able to pay any portion of the damages claimed”)- Courts also decide cases against foreign nations, whose choices to respect final rulings are not guaranteed. See, e. g., Republic of Austria v. Altmann, 541 U. S. 677 (2004) (suit against Austria for return of paintings); Republic of Argentina v. Weltover, Inc., 504 U. S. 607 (1992) (suit against Argentina for repayment of bonds). And we have heard the Government’s appeal from the reversal of a conviction, even though the defendants had been deported, reducing the practical impact of any decision; we concluded that the case was not moot because the defendants might “re-enter this country on their own” and encounter the consequences of our ruling. United States v. Villamonte-Marquez, 462 U. S. 579, 581, n. 2 (1983).
So too here. A re-return order may not result in the return of E. C. to the United States, just as an order that an insolvent defendant pay $100 million may not make the plaintiff rich. But it cannot be said that the parties here have no “concrete interest” in whether Mr. Chafin secures a re-return order. Knox, 567 U. S., at 307 (internal quotation marks omitted). “[HJowever small” that concrete interest may be due to potential difficulties in enforcement, it is not simply a matter of academic debate, and is enough to save this case from mootness. Ibid. (internal quotation marks omitted).
B
Mr. Chafin also seeks, if he prevails, vacatur of the District Court’s expense orders. The District Court ordered Mr. Chafin to pay Ms. Chafin over $94,000 in court costs, attorney’s fees, and travel expenses. See Civ. No. 11-1461 (ND Ala., Mar. 7, 2012), pp. 15-16; Civ. No. 11-1461 (ND Ala., June 5, 2012), p. 2. That award was predicated on the District Court’s earlier judgment allowing Ms. Chafin to return *177 with her daughter to Scotland. See Civ. No. 11-1461 (ND Ala., Mar. 7, 2012), pp. 2-3, and n. 2.[3] Thus, in conjunction with reversal of the judgment, Mr. Chafin desires vacatur of the award. That too is common relief on appeal, see, e. g., Fawcett, supra, at 501, n. 6 (reversing costs and fees award when reversing on the issue of wrongful removal), and the mootness inquiry comes down to its effectiveness.
At oral argument, Ms. Chafin contended that such relief was “gone in this case,” and that the case was therefore moot, because Mr. Chafin had failed to pursue an appeal of the expense orders, which had been entered as separate judgments. Tr. of Oral Arg. 33; see Civ. No. 11-1461 (ND Ala., Mar. 7, 2012); Civ. No. 11-1461 (ND Ala., June 5, 2012). But this is another argument on the merits. Mr. Chafin’s requested relief is not so implausible that it may be disregarded on the question of jurisdiction; there is authority for the proposition that failure to appeal such judgments separately does not preclude relief. See 15B Wright, Miller, & Cooper, supra, §3915.6, at 230, and n. 39.5 (2d ed., Supp. 2012) (citing cases). It is thus for lower courts at later stages of the litigation to decide whether Mr. Chafin is in fact entitled to the relief he seeks—vacatur of the expense orders.
Such relief would of course not be “‘fully satisfactory/” but with respect to the case as whole, “even the availability of a ‘partial remedy’ is ‘sufficient to prevent [a] case from being moot.’ ” Calderon v. Moore, 518 U. S. 149, 150 (1996) (per curiam) (quoting Church of Scientology, 506 U. S., at 13).
*178 1—1 <1
Ms. Chafin is correct to emphasize that both the Hague Convention and ICARA stress the importance of the prompt return of children wrongfully removed or retained. We are also sympathetic to the concern that shuttling children back and forth between parents and across international borders may be detrimental to those children. But courts can achieve the ends of the Convention and ICARA—and protect the well-being of the affected children—through the familiar judicial tools of expediting proceedings and granting stays where appropriate. There is no need to manipulate constitutional doctrine and hold these cases moot. Indeed, doing so may very well undermine the goals of the treaty and harm the children it is meant to protect.
If these cases were to become moot upon return, courts would be more likely to grant stays as a matter of course, to prevent the loss of any right to appeal. See, e. g., Garrison v. Hudson, 468 U. S. 1301, 1302 (1984) (Burger, C. J., in chambers) (“When . . . the normal course of appellate review might otherwise cause the case to become moot, issuance of a stay is warranted” (citation and internal quotation marks omitted)); Nicolson v. Pappalardo, Civ. No. 10-1125 (CA1, Feb. 19, 2010) (‘Without necessarily finding a clear probabil-' ity that appellant will prevail, we grant the stay because . .. a risk exists that the case could effectively be mooted by the child’s departure”). In cases in which a stay would not be granted but for the prospect of mootness, a child would lose precious months when she could have been readjusting to life in her country of habitual residence, even though the appeal had little chance of success. Such routine stays due to mootness would be likely but would conflict with the Convention’s mandate of prompt return to a child’s country of habitual residence.
Routine stays could also increase the number of appeals. Currently, only about 15% of Hague Convention cases are appealed. Hague Conference on Private Int’l Law, N. Lowe, *179 A Statistical Analysis of Applications Made in 2008 Under the Hague Convention of 25 October 1980 on the Civil Aspects of International Child Abduction, Pt. Ill-National Reports 207 (2011). If losing parents were effectively guaranteed a stay, it seems likely that more would appeal, a scenario that would undermine the goal of prompt return and the best interests of children who should in fact be returned. A mootness holding here might also encourage flight in future Hague Convention cases, as prevailing parents try to flee the jurisdiction to moot the case. See Bekier, 248 F. 3d, at 1055 (mootness holding “to some degree conflicts with the purposes of the Convention: to prevent parents from fleeing jurisdictions to find a more favorable judicial forum”).
Courts should apply the four traditional stay factors in considering whether to stay a return order: “ ‘(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.’” Nken v. Holder, 556 U. S. 418, 434 (2009) (quoting Hilton v. Braunskill, 481 U. S. 770, 776 (1987)). In every case under the Hague Convention, the well-being of a child is at stake; application of the traditional stay factors ensures that each case will receive the individualized treatment necessary for appropriate consideration of the child’s best interests.
Importantly, whether at the district or appellate court level, courts can and should take steps to decide these cases as expeditiously as possible, for the sake of the children who find themselves in such an unfortunate situation. Many courts already do so. See Federal Judicial Center, J. Garbolino, The 1980 Hague Convention on the Civil Aspects of International Child Abduction: A Guide for Judges 116, n. 435 (2012) (listing courts that expedite appeals). Cases in American courts often take over two years from filing to resolution; for a 6-year-old such as E. C., that is one-third *180 of her lifetime. Expedition will help minimize the extent to which uncertainty adds to the challenges confronting both parents and child.
* * *
The Hague Convention mandates the prompt return of children to their countries of habitual residence. But such return does not render this case moot; there is a live dispute between the parties over where their child will be raised, and there is a possibility of effectual relief for the prevailing parent. The courts below therefore continue to have jurisdiction to adjudicate the merits of the parties’ respective claims.
The judgment of the United States Court of Appeals for the Eleventh Circuit is vacated, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

 Whether Scotland would do so is unclear; Ms. Chafin cited no authority for her assertion in her brief or at oral argument. In a recently issued decision from the Family Division of the High Court of Justice of England and Wales, a judge of that court rejected the “concept of automatic re-return of a child in response to the overturn of [a] Hague order.” DL v. EL, [2013] EWHC (Fam.) 49, ¶59 (Judgt. of Jan. 17). The judge in that case did not ignore the pertinent re-return order—issued by the District Court in Larbie v. Larbie, 690 F. 3d 295 (CA5 2012), cert. pending, *175 No. 12-304 [Reporter’s Note: See post, p. 1192]—but did not consider it binding in light of the proceedings in England.
Earlier in those proceedings, the Family Division of the High Court directed the parties to provide this Court with a joint statement on the status of those proceedings. This Court is grateful for that consideration.

 Ms. Chafin suggests that the Scottish court’s ne exeat order prohibits E. C. from leaving Scotland. The ne exeat order, however, only prohibits Mr. Chafin from removing E. C. from Scotland; it does not constrain Ms. Chafin in the same way.

 The award was predicated on the earlier judgment even though that judgment was vacated. The District Court cited Eleventh Circuit cases for the proposition that if a plaintiff obtains relief before a district court and the case becomes moot on appeal, the plaintiff is still a prevailing party entitled to attorney’s fees. We express no view on that question. The fact remains that the District Court ordered Mr. Chafin to pay attorney’s fees and travel expenses based on its earlier ruling. A reversal, as opposed to vacatur, of the earlier ruling could change the prevailing party calculus and afford Mr. Chafin effective relief.