JENNIFER WALKER ELROD, Circuit Judge,
concurring in the judgment:
This Hague Convention[1] proceeding is but the latest chapter in a multi-volume cross-border custody dispute spanning the courts of Texas, the United States, and Mexico. See Berezowsky v. Ojeda (Ojeda I), 765 F.3d 456, 459-65 (5th Cir. 2014) (recounting the involvement of “at least 12 different courts”). Deploying the Hague Convention’s “return” remedy, the district court ordered respondent Pablo Angel Rendon Ojeda to return his then-three-year-old son PARB to PARB’s mother, petitioner Michelle Gomez Berezowsky, in Mexico. The district court denied the father’s stay motion and PARB was returned immediately, even as the father appealed the return order to our court. We ultimately vacated the return order, holding that a prerequisite to the Hague Convention return remedy was absent because Mexico was not PARB’s place of habitual residence. Id. at 459; see Convention art. 3(a). But vacating the order did not undo its practical effect, which by then was already complete: PARB remained — and, as far as we know, remains now — in Mexico with his mother as a result of the order that we held was erroneous.
Out of concern that children “would lose precious months when [they] could have been readjusting to life in [their] country of habitual residence,” the Supreme Court has discouraged courts from routinely staying return orders pending their final resolution on appeal. Chafin v. Chafin, — U.S. -, 133 S.Ct. 1017, 1027, 185 L.Ed.2d 1 (2013); accord id. at 1029-30 (Ginsburg, J., concurring). Denying a stay, however, entrenches the return order while it may yet be vacated. See, e.g., Redmond v. Redmond, 724 F.3d 729 (7th Cir. 2013) (reversing already-executed return order where stay had been denied); Larbie v. Larbie, 690 F.3d 295 (5th Cir. 2012) (reversing already-executed return order where no stay had been sought). “Where no stay is ordered, the risk of a two-front battle over custody will remain real.” Chafin, 133 S.Ct. at 1030 & n.4 (Ginsburg, J., concurring) (citing the rival custody proceedings in Larbie). Cases like this one illustrate the truth of this statement.
*255 With PARB already returned to Mexico, Rendon’s appeal continued to present a live controversy because of the possibility that we might “reverse the District Court and that the District Court [might] undo what it ha[d] done” — that is, order that PARB be “re-returned” to the United States. Chafin, 133 S.Ct. at 1024; see Ojeda I, 765 F.3d at 464 n.4. Under Chafin, once we did reverse the district court, it would have been appropriate for the district court to consider PARB’s re-return. Nevertheless, as the majority opinion explains, because our mandate did not discuss the issue and because the district court may have considered and rejected re-return, the district court did not abuse its discretion in denying Rendon’s Rule 59(e) motion for re-return. I consequently concur in the judgment.
This case provides yet another example of the problems that can occur when federal courts address Hague Convention return petitions. The Hague Convention’s role within the broader context of cross-border custody disputes is to undo an abduction so as to “facilitate custody adjudications, promptly and exclusively, in the place where the child habitually resides.” Chafin, 133 S.Ct. at 1028 (Ginsburg, J., concurring) (citing Convention arts. 1, 3). But time and again federal courts have struggled in that task, likely because of both the substantive law involved and the procedural strictures of federal court litigation. Cf. Redmond, 724 F.3d at 749 (Easterbrook, J., dubitante) (“It is time for this federal overlay to end and the subject be returned to the domestic-relations' apparatus of Illinois and Ireland, where it should have been all along.”).
For example, we have struggled to heed our own admonition that, in light of the Hague Convention’s limited purview, courts “must not cross the line into a consideration of the underlying custody dispute.” Sealed Appellant v. Sealed Appellee, 394 F.3d 338, 344 (5th Cir. 2004); see 22 U.S.C. § 9001(b)(4) (“The Convention and this chapter empower courts in the United States -to determine only rights under the Convention and not the merits of any underlying child custody claims.”). In spite of that straightforward directive, we recently gave one of the Hague Convention exceptions an interpretation that we acknowledged could “embroil the state of refuge in the underlying custody dispute.” Rodriguez v. Yanez, 817 F.3d 466, 475 & n.33 (5th Cir. 2016) (interpreting the exception for when “the child objects to being returned”); see Convention art. 13. We likewise recently joined the Second and Ninth Circuits in adopting a multi-factor test for the Convention’s “well-settled” defense that requires courts to weigh custody-type considerations, including “the stability and duration of the child’s residence in the new environment,” “whether the child attends school or day care consistently,” “the child’s participation in com.munity or extracurricular activities,” and the respondent parent’s “employment and financial stability.” Hernandez v. Garcia Pena, 820 F.3d 782, 787-88 (5th Cir. 2016); see John DeWitt Gregory, Peter Nash Swisher & Robin Fretwell Wilson, Understanding Family Law 522-23 (4th ed. 2013) (listing factors state courts typically consider when adjudicating child custody). These are complicated and wrenching areas of substantive law with which we have little expertise.
Nor-are we well-suited to the prompt resolution that the Hague Convention envisions we will achieve. The Convention sets six weeks as the target time for judicial disposition of a petition, see Convention art. 11, but in 2008, from the filing of a Hague Convention petition in the United States, “the average time taken to reach a first instance decision was 209 days compared with 441 days to finalise a case that was appealed.” Nigel Lowe, A Statistical Analysis of Applications Made in 2008 *256 Under the Hague Convention of 25 October 1980 on the Civil Aspects of International Child Abduction — Part III, National Reports 207 (2011). In one prominent and particularly unfortunate example, after the Supreme Court held that the petitioning parent could seek a return order in Abbott v. Abbott, 560 U.S. 1, 130 S.Ct. 1983, 176 L.Ed.2d 789 (2010), the district court had to dismiss the petition on remand because, during the nearly-six-year course of the litigation, the child had turned sixteen — at which point the Convention ceased to apply. Gregory, Swisher & Wilson, supra, at 515 n.117.
Justice Ginsburg has suggested a legislative fix by which district court return orders could be appealed only with leave from the court of appeals, with the return order routinely stayed if leave is granted. Chafin, 133 S.Ct. at 1030 (Ginsburg, J., concurring). In the meantime, any parent with a foreign custody judgment can keep federal courts out of the equation altogether by seeking the enforcement of that judgment in the courts of any of the fifty states, all of which have adopted either the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) or its predecessor statute. Gregory, Swisher & Wilson, supra, at 501. See generally Robert G. Spector, International Abduction of Children: Why the UCCJEA Is Usually a Better Remedy than the Abduction Convention, 49 Fam. L.Q. 385 (2015) (contrasting the Hague Convention and UCCJEA regimes). As for the parties here, I am reminding of my colleague’s admonition in our previous encounter with this case: “ You owe your child better than this’ and [we] urge both parents to make a concerted effort to settle this matter in PARB’s, not their own, best interests.” Ojeda I, 765 F.3d at 476 (Haynes, J., dissenting).

. Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670; 22 U.S.C. §§ 9001-11.