# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-3482

_____

United States of America

*Plaintiff - Appellee*

v.

Lamar McDonald, also known as Mike, also known as Marty

*Defendant – Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 21, 2023
Filed: December 6, 2023
[Unpublished]

_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.

_____

PER CURIAM.

A court[1] order requires doctors at the Federal Medical Center in Springfield, Missouri, to medicate Lamar McDonald against his will. The goal is to make him

_____

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri, adopting the report and recommendation of the

competent to stand trial on a single count of conspiring to distribute methamphetamine,[2] *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), 846. He claims that the government's justification is too weak, given the health risks, but we affirm.

## I.

It takes an "important" government interest to forcibly medicate someone. *Sell v. United States*, 539 U.S. 166, 180 (2003); *see also United States v. Mackey*, 717 F.3d 569, 573 (8th Cir. 2013) (applying de novo review). One interest that is important enough is prosecuting someone for a "serious crime." *Sell*, 539 U.S. at 180. McDonald's drug-trafficking charge qualifies, given the life sentence he faces. *See* 21 U.S.C. § 841(b)(1)(A)(viii); *see also Mackey*, 717 F.3d at 573 (recognizing that the maximum punishment for a crime "is the most relevant objective indication of the seriousness with which society regards [it]"). Indeed, an offense carrying a *maximum* sentence equal to the *minimum* here—120 months, *see* 21 U.S.C. § 841(b)(1)(A)(viii)—can justify the forced administration of antipsychotic drugs. *See Mackey*, 717 F.3d at 573.

Honorable Shirley Padmore Mensah, United States Magistrate Judge for the Eastern District of Missouri.

[2]The government is also medicating McDonald to stop him from harming himself, which it can do without a court order. *See Washington v. Harper*, 494 U.S. 210, 227, 233 (1990). The competency order remains in effect, however, and requires the doctors to keep medicating him even if he is no longer dangerous, so McDonald retains a "concrete interest" in having it overturned. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted) (describing when an appeal "is not moot"); *cf. Eason v. United States*, 912 F.3d 1122, 1123 (8th Cir. 2019) (explaining that a prisoner can challenge a sentence that increases the time he has to serve or "otherwise prejudice[s] him in any way," even if he is also serving a concurrent sentence). As for the possibility that his current treatment might undermine the justification for the order, McDonald has not made that argument, much less offered evidence to support it, so we do not address it. *See Stephenson v. Davenport Cmty. Sch. Dist.*, 110 F.3d 1303, 1307 n.3 (8th Cir. 1997).

There is also nothing "[s]pecial" about McDonald's case that "lessen[s] the importance of" bringing him to trial. *Sell*, 539 U.S. at 180. The non-violent nature of his crime and the absence of direct victims are not barriers, *see id.* at 169 (contemplating involuntary medication "for serious, but nonviolent, crimes"); *Mackey*, 717 F.3d at 574, nor is the speculative possibility of civil commitment, *see Sell*, 539 U.S. at 180 (explaining that, at most, this possibility "affects, but does not totally undermine, the strength of the need for prosecution"). And even the conviction of McDonald's co-conspirators does not lessen the government's interest in prosecuting *him*.

II.

Administering antipsychotic drugs to treat his schizophrenia is also "medically appropriate." *Id.* at 181 (asking whether the proposed treatment is "in the patient's best medical interest in light of his medical condition"). According to the chief psychiatrist at the facility holding him, these drugs are the standard treatment in these circumstances, and he "would [have] strongly recommend[ed]" them for McDonald, even "outside of the medical-legal setting."

It is true that McDonald's medical history is extensive. He suffers from multiple conditions, including diabetes, hypertension, and stage-3 kidney disease. But there is no evidence that any of them, individually or together, would make the use of antipsychotic medications unsafe. And his treatment plan accounts for any risk by requiring medical personnel to start at low doses, carefully watch for side effects, and make sure his single remaining kidney can clear the medication. Even if the doctors could not provide a "100 percent assur[ance]" that McDonald would face no complications, the district court did not clearly err in concluding the treatment was "medically appropriate." *See Mackey*, 717 F.3d at 576 (reviewing for clear error); *see also United States v. Coy*, 991 F.3d 924, 931 (8th Cir. 2021) (upholding a "flexib[le]" treatment plan that "allow[ed] the treatment team to

properly respond to the effects of the medication, especially undesired side effects that might arise").

III.

We accordingly affirm the order requiring the administration of antipsychotic drugs to McDonald.

KELLY, Circuit Judge, dissenting.

As the parties clarified at oral argument, FMC Springfield has been forcibly medicating McDonald since March 2023 on the grounds that he is a danger to himself. See Washington v. Harper, 494 U.S. 210, 227 (1990) ("[T]he Due Process Clause permits the [government] to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, [and without a court order,] if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest."). The government represents that the treatment McDonald is receiving is the same treatment it proposed at the February 2022 Sell hearing, and which the district court ordered. See Sell v. United States, 539 U.S. 166 (2003). However, McDonald's involuntary medication on Harper grounds may moot the district court's Sell order to forcibly medicate McDonald for trial competency purposes. Id. at 183 (recognizing that when antipsychotic medication is authorized on "alternative grounds, the need to consider authorization on trial competence grounds will likely disappear"). At last report, it appears that McDonald is increasingly cooperative and mostly compliant with his treatment at FMC Springfield.

Either way, the Sell order was entered without the benefit of the information gathered in the more recent, and "more 'objective and manageable'" Harper proceedings. Sell, 539 U.S. at 182 (quotation omitted). At the Sell hearing, McDonald raised concerns about the health risks associated with the government's proposed treatment plan. The district court should have the opportunity to consider the efficacy of, and McDonald's response to, the treatment regimen imposed under

Harper before it enters an order under Sell. See United States v. Osborn, 921 F.3d 975, 982 (10th Cir. 2019) ("Vacating Sell orders if and when intervening Harper proceedings occur helps to keep Sell orders in their proper place as remedies of last resort.").

Moreover, a Sell order addresses a situation where a "defendant is *presently* suffering from a mental disease or defect rendering him mentally incompetent" to stand trial. 18 U.S.C. § 4241(d) (emphasis added); Sell, 539 U.S. at 186 ("Since [a defendant]'s medical condition may have changed over time, the Government should [pursue forced medication] on the basis of current circumstances."). The government has an important interest in prosecuting McDonald, but there is no legal support for the idea that it should be permitted to keep an outdated Sell order at-the-ready in the event that McDonald is no longer gravely disabled or a danger to himself. Because McDonald is currently receiving treatment—including antipsychotic medication—the district court's November 2022 Sell order does not reflect the current necessity or medical appropriateness of the government's proposed competency-restoration plan.

Given McDonald's recent Harper proceedings, I would vacate the district court's Sell order. If the current treatment regimen imposed pursuant to these proceedings has not rendered McDonald competent to stand trial, then the statute authorizes the government to file a competency motion, and request a Sell order, "at any time" prior to sentencing. See § 4241(a). Regardless, McDonald retains "a 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs.'" Sell, 539 U.S. at 178 (quoting Harper, 494 U.S. at 221); Riggins v. Nevada, 504 U.S. 127, 135, 137–38 (1992). And court-ordered competency-restoration treatment, while permissible, should be imposed only in carefully limited circumstances. Sell, 539 U.S. at 169; see also United States v. Watson, 793 F.3d 416, 419 (4th Cir. 2015) (emphasizing that forced medication to render a defendant competent to stand trial "is the exception, not the rule").

_____