FILED

NOT FOR PUBLICATION

APR 17 2015

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re: A.L.C; E.R.S.C., Infants under the age of 16,<br><br>ANDREAS CARLWIG,<br><br>               Petitioner - Appellee,<br><br> v.<br><br>SARODJINY CARLWIG,<br><br>             Respondent - Appellant. | No. 14-55671<br><br>D.C. No. 2:14-cv-01506-ODW-SH<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted March 2, 2015
Pasadena, California

Before: PREGERSON, FERNANDEZ, and NGUYEN, Circuit Judges.

Sarodjiny "Sarah" Carlwig appeals the decision and order of the district

court sending A.L.C. and E.R.S.C., her dual-national American and Swedish

---

     [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

children, to Sweden pursuant to the Convention on the Civil Aspects of International Child Abduction (the "Convention"), and its implementing legislation, the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001-11. We have jurisdiction under 28 U.S.C. § 1291. We affirm the district court's decision relating to A.L.C., vacate the portion of the decision relating to E.R.S.C., and decline to issue a re-return order as to E.R.S.C.

"[H]abitual residence analysis is . . . a mixed question of fact and law under which we review essentially factual questions for clear error and the ultimate issue of habitual residency de novo." *Holder v. Holder*, 392 F.3d 1009, 1015 (9th Cir. 2004) (internal citation and quotation marks omitted). We "must consider the unique circumstances of each case when inquiring into a child's habitual residence." *Id*. at 1016.

1. We affirm the judgment of the district court that A.L.C. is a habitual resident of Sweden, where he now resides with his father, Andreas Carlwig.

When a child moves between nations and a parent files a Convention petition revealing a dispute over habitual residence, we first "look for the last shared, settled intent of the parents." *Valenzuela v. Michel*, 736 F.3d 1173, 1177 (9th Cir. 2013). In conducting our review we give "appropriate deference to the

2

district court's findings of fact and credibility determinations." *Papakosmas v. Papakosmas*, 483 F.3d 617, 623 (9th Cir. 2007).

When an examination of shared intent does not resolve a dispute between two potential habitual residences, a child's newer residence can be found to be the child's habitual residence when "the objective facts point unequivocally" to "the child's relative attachments to the two countries [changing] to the point where requiring return to the original forum would now be tantamount to taking the child out of the family and social environment in which its life has developed," a process known as acclimatization. *Mozes v. Mozes*, 239 F.3d 1067, 1081 (9th Cir. 2001) (internal quotation marks and citations omitted). We are mindful that we must be "slow to infer from contacts with a new country that an earlier habitual residence has been abandoned, both because the inquiry is fraught with difficulty, and because readily inferring abandonment would circumvent the purpose of the Convention." *Murphy v. Sloan*, 764 F.3d 1144, 1152-53 (9th Cir. 2014) (alterations and internal quotation mark omitted).

When the Carlwig family moved to Sweden in 2012,[1] they established a regular household together, enrolled A.L.C. in local pre-school, and supported A.L.C.'s participation in soccer, swimming, and martial arts. A.L.C. spent time with his father's relatives and demonstrated fluency in the Swedish language. Over thirteen months, A.L.C.'s circumstances and activities demonstrate that he acclimatized to Sweden and that country became the primary locus of his life. *See Mozes*, 239 F.3d at 1078-79. We agree with the district court that A.L.C. became a habitual resident of Sweden.

In February 2013, A.L.C. traveled to Los Angeles with his pregnant mother, leaving his father behind in Sweden. During several month in Los Angeles, A.L.C.

---

[1] The district court did not clearly err in its factual determination that the Carlwigs abandoned any habitual residence that the family shared in Dubai, A.L.C.'s 2008 birthplace. *See Mozes*, 239 F.3d at 1075-76 (finding an intent to abandon a habitual residence is a question of fact best determined by the district court).

Both parents agree that the family left nothing behind and that the family maintained no contacts after moving to Sweden in 2012. Where a family "manifest[s] a settled purpose to change habitual residence, despite the fact that one parent may have had qualms about the move[,]" courts generally recognize a shift in habitual residence. *Id.* at 1076. The distinction between the qualms of a spouse during a move and the coercion of one spouse by another to affect an involuntary move is of concern in the court's analysis, *see Tsarbopoulos v. Tsarbopoulos*, 176 F. Supp. 2d 1045, 1056 (E.D. Wash. 2001), but Ms. Carlwig does not argue before this court that her move to Sweden was coerced or involuntary.

did develop contacts in the United States. Ms. Carlwig enrolled A.L.C. in summer camp, pre-school, and extracurricular activities.

However, A.L.C.'s contacts developed in the shadow of disagreement between his parents over the trip's purpose. Ms. Carlwig argues that she intended to move permanently to the United States with A.L.C. The district court found that Mr. Carlwig believed the trip's purpose was for Ms. Carlwig to give birth and recover before returning with the children to Sweden. The district court did not err in holding that Mr. Carlwig intended A.L.C.'s trip to last approximately six months.

During A.L.C.'s time in the United States, Mr. Carlwig maintained active involvement in his son's life, arranging regular communication with A.L.C. from Sweden, visiting A.L.C. in Los Angeles, and making preparations for A.L.C.'s return to Sweden. There is no evidence in the record of a shared parental intent for A.L.C. to move permanently to the United States and there is significant evidence of Mr. Carlwig actively objecting to A.L.C.'s time in Los Angeles lasting more than six months.

Without a shared parental intent for a permanent change of habitual residence, we find that A.L.C.'s contacts and relative attachments in Los Angeles were insufficient to prove unequivocally that he had acclimatized to United States

or that his habitual residence in Sweden had been abandoned. *Id.* at 1081. The district court was correct to order A.L.C. returned to his habitual residence, Sweden, under the Convention and we affirm.

2. We vacate the judgment of the district court that E.R.S.C. was a habitual resident of Sweden. The district court clearly erred in finding E.R.S.C. could be a habitual resident of a nation in which she never resided.

We "interpret the expression 'habitual residence' according to the ordinary and natural meaning of the two words it contains." *Id*. at 1071 (internal quotation mark and citation omitted). "Habitual residence" describes "a factual state of affairs" and we recognize the obvious truth that "habitual residence cannot be acquired without physical presence." *Id*. at 1080-81. E.R.S.C. had never been to Sweden prior to the execution of the district court's order.

The district court's effort to sift through the past intentions of Sarah and Andreas Carlwig to find a moment of settled, shared intent for E.R.S.C. to someday reside in Sweden was erroneous.

We reject the other rationales cited by the district court in deciding E.R.S.C. was a habitual resident of Sweden. The district court's explanations that it would be untenable to split up the siblings for custody determinations and that Mr. Carlwig is employed in Sweden while Ms. Carlwig "is unemployed here in the

U.S. and rel[ies] on financial support from [the] Father as well as governmental assistance," because they go to the merits of the custody claims and are not relevant to the Convention's required analysis. *See* 22 U.S.C. § 9001(b)(4) ("The Convention and this chapter empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims.").

The district court clearly erred in finding E.R.S.C. was a habitual resident of Sweden and we vacate its decision.

3. We agree with the district court's determination that E.R.S.C. was not a habitual resident of the United States.

A child's "place of birth is not automatically the child's habitual residence." *Holder*, 392 F.3d at 1020. The court has found that when "a child is born where the parents have their habitual residence, the child normally should be regarded as a habitual resident of that country." *Id.* E.R.S.C. was not born into that simple situation. Nor is E.R.S.C.'s habitual residence derived automatically from her mother's location and caregiving. *See Nunez-Escudero v. Tice-Menley*, 58 F.3d 374, 379 (8th Cir. 1995); *Friedrich v. Friedrich*, 983 F.2d 1396, 1401-02 (6th Cir. 1993).

Justifying E.R.S.C.'s habitual residence as the United States based on her contacts in Los Angeles is ineffective as "it is practically impossible for a newborn child, who is entirely dependent on its parents, to acclimatize independent of the immediate home environment." *Holder*, 392 F.3d at 1020-21. When a child is born under a cloud of disagreement between parents over the child's habitual residence, and a child remains of a tender age in which contacts outside the immediate home cannot practically develop into deep-rooted ties, a child remains without a habitual residence because "if an attachment to a State does not exist, it should hardly be invented." *Id*. at 1020 (quoting Paul R. Beaumont & Peter E. McEleavy, *The Hague Convention on International Child Abduction* 89, 112 (1999)); *see also Delvoye v. Lee*, 329 F.3d 330, 333 (3d Cir. 2003) (stating that when a "conflict [of parental intent] is contemporaneous with the birth of the child, no habitual residence may ever come into existence.")

We find that E.R.S.C.'s nine months as an infant in Los Angeles do not result in E.R.S.C. acquiring habitual residence in the United States when E.R.S.C.'s parents never shared an intent for her to reside in the United States beyond Ms. Carlwig's period of recovery after giving birth.

Thus when Mr. Carlwig filed his Convention petition in February 2014, E.R.S.C. did not have a habitual residence. E.R.S.C.'s retention by her mother in

8

the United States was not wrongful under the Convention and the district court erred in ordering E.R.S.C.'s return to Sweden. Further, E.R.S.C. is not wrongfully retained by her father in Sweden under the Convention now as she was not removed from her country of habitual residence to Sweden.

Because E.R.S.C. had no habitual residence, no further analysis of this matter under the Convention and its implementing legislation is possible, as the Convention does not apply to a child who was never wrongfully removed or retained. *See* 22 U.S.C. § 9001(a)(4) (finding that the Convention "establishes legal rights and procedures for the prompt return of children who have been wrongfully removed or retained"). While we do have the equitable power to undo the district court's action by issuing a re-return order, *see Chafin v. Chafin*, 133 S. Ct. 1017, 1024 (2013), we decline to do so.[2]

"These cases are always heart-wrenching, and there is inevitably one party who is crushed by the outcome. [The court] cannot alleviate the parties' emotional trauma, but at a minimum [the court] can hope to provide them and their children

---

[2] "[T]he concept of automatic re-return of a child in response to the overturn of [a Convention] order pursuant to which [E.R.S.C. went to Sweden] is unsupported by law or principle, and would . . . be deeply inimical to [E.R.S.C.'s] best interest." *Id*. at 1029 n.2 (Ginsburg, J., concurring) (quoting *DL v. EL*, [2013] EWHC 49, ¶ 59(e)). The observation that "the advent of rival custody proceedings [in California and Sweden] is just what the Convention aimed to stave off" is on point in this case. *Id*. at 1029 (Ginsburg, J., concurring).

with a prompt resolution so that they can escape legal limbo." *Holder*, 392 F.3d at 1023.  So it is with this case.

The district court's decision is **AFFIRMED** in relation to A.L.C. and **VACATED** in relation to E.R.S.C.  The parties shall bear their own costs from litigation.