PER CURIAM: *
Michelle Gomez Berezowsky and Pablo Angel Rendon Ojeda, Mexican nationals, are locked in a custody dispute over their six-year-old son, “PARB.” Berezowsky filed a Hague Convention petition in the *250 Southern District of Texas, arguing that Rendon had wrongfully removed PARB from his habitual residence (purportedly Mexico). The district court ruled in her favor, and Rendon appealed. We vacated and remanded with instructions to dismiss.[1] After the district court dismissed the suit without further comment, Rendon moved to amend the judgment and ultimately appealed once more to this court, arguing that the district court should have ordered Berezowsky to return PARB to him. Finding no reversible error in the judgment below, we AFFIRM.
I
Since shortly after PARB’s birth in May 2009, Berezowsky and Rendon have been fighting over the child in state, federal, and foreign courts.[2] The events underlying the present appeal began in fall 2012, when, amidst conflicting 'rulings from a Texas state district court and several Mexican courts, Rendon took PARB from his school in Mexico and brought him to Texas. Berezowsky then filed a Hague Convention petition in the Southern District of Texas, alleging that Rendon had illegally removed PARB from his habitual residence.[3] The district court agreed and ordered PARB returned to Berezowsky,[4] Rendon complied, and Berezowsky, with the district court’s permission, left for Mexico with PARB.
In the meantime, Rendon appealed, asking that PARB be returned to him. In an August 2014 decision (hereinafter Ojeda I), we overturned the district court’s judgment, finding that “Berezowsky failed to meet her burden of establishing that Mexico was PARB’s place of habitual residence.”[5] We concluded, in relevant part, that “[f]or the reasons stated in this opinion we VACATE the district court’s order and REMAND with instructions to dismiss.” [6] The accompanying mandate stated that “[i]t is ordered and adjudged that the judgment of the District Court is vacated, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court.”
On remand, the district court succinctly “ORDERED THAT the [District] Court’s Order for the return of the child [to Bere-zowsky] ... is VACATED and this action is DISMISSED.” Rendon timely filed a Rule 59(e) motion to amend the judgment, asking the court to order Berezowsky to return PARB to him in light of the dismissal. The district court denied the motion, and Rendon again appealed.
*251 ii
We review the denial of a Rule 59(e) motion for abuse of discretion.[7] “Under Rule 59(e), amending a judgment is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact.”[8] “ ‘Manifest error’ is one that ‘is plain and indisputable, and that amounts to a complete disregard of the controlling law’ ” or “an obvious mistake or departure from the truth.”[9]
The same abuse of discretion standard and three-prong test govern a district court’s decision to deviate (or not) from a mandate.[10] “We review de novo whether a district court accurately interpreted and applied the directives of an appellate court’s mandate.”[11]
III
Rendon and Berezowsky offer starkly different readings of our Ojeda I mandate. Rendon claims that the mandate unambiguously required the district court to order PARB’s return to him. On this reading, the district court “manifestly err[ed]” in refusing to enter such an order, rendering its denial of Rendon’s 59(e) motion an abuse of discretion. Rendon plausibly claims that any other reading would allow his victory on appeal to become a de facto defeat, impermissibly violating the spirit (if not the letter) of our mandate;[12] as he points out, “[t]he current reality on the ground is Berezowsky retains possession of [PARB] solely by virtue of a Return Order which has been vacated by this Court.”[13]
Berezowsky claims that the Ojeda I mandate forbade the district court from *252 issuing a re-return order. She offers three substantive rejoinders to Rendon’s arguments.[14] First, she argues that both we and the district court were powerless to order a re-return, because the Hague Convention does not contemplate such a remedy. It is true that neither the Convention nor its implementing legislation, the International Child Abduction Remedies Act,[15] articulates a re-return right, or, indeed, appellate remedies or procedures of any sort.[16] But the federal courts do not need the Convention’s permission to issue a re-return order. As the Supreme Court recognized in Chafin v. Chafin, a re-return order is “typical appellate relief,” as it simply requires “that the Court of Appeals reverse the District Court and that the District Court undo what it has done.”[17] The federal courts have inherent equitable power to order such relief.[18]
Second, Berezowsky argues that the Ojeda I court’s failure to explicitly order a re-return, despite Rendon’s request for one, should be interpreted as an implicit decision not to allow a re-return order, which in turn prevented the district court from ordering that relief. We find this interpretation plausible, but note that only “matters which were ‘decided by necessary implication [or] explicitly’” are off-limits on remand.[19] Rendon’s request demonstrates at a minimum that our silence as to a re-return order was deliberate, since the request alerted us to the possibility of such an order. But even if our silence was deliberate, it does not necessarily follow that our silence implied rejection of Rendon’s request and foreclosed the district court from granting it.
Third, and relatedly, Berezowsky argues that the text of our mandate must be construed strictly; because the text does not expressly contemplate a re-return order, she claims, no such order may issue. Berezowsky points to the principle that “[t]he mandate rule requires a district court on remand to effect [the] mandate and to do nothing else,”[20] and argues that *253 the order to “dismiss” precluded further action by definition. But her definitional argument is questionable,[21] and the notion that the district court could “do nothing else” adds little, since our mandate could plausibly be interpreted to implicitly require or permit a re-retum order (as discussed above).
IV
Given the above, we find neither Bere-zowsky’s nor Rendon’s interpretation of our Ojeda I mandate entirely compelling. Moreover, we have found no binding precedent addressing how a mandate “vacating] ... and remanding] with instructions to dismiss” should be parsed.[22] Given this, we conclude that Ojeda I neither required nor forbade a re-return order. Rather, we simply did not decide in that case whether or not a re-return order was warranted. Because a lower court “is free to decide matters which are left open by the mandate,” the decision to issue or deny a re-return order was therefore the district court’s.[23]
The district court decided not to issue a re-return order. As noted above, its subsequent refusal to amend the judgment (which provides the basis of the present appeal) is reviewed for abuse of discretion, and amendment is appropriate if the controlling law has changed, if new evidence is available, or if the initial decision was manifestly erroneous as a matter of law or fact. But Rendon does not allege new evidence or a change in controlling law, and the district court’s decision was not legally or factually erroneous. The law of the case did not compel a re-return order, and the court reasonably could have concluded on these facts that the equities did not favor a re-return order. As three Justices noted in a concurrence in Chafin, re-return orders may prolong and fracture custody proceedings, and “‘shuttling children back and forth between parents and across international borders may be detrimental to those children’ whose welfare led [to] the *254 [Hague] Convention.”[24] Citing these concerns, the Ninth Circuit recently refused to issue a re-return order after overturning a district court’s Hague Convention decision, in what appears to be the only federal appellate case addressing the propriety of such an order.[25]
The district court did not abuse its discretion in refusing to issue a re-return order. We therefore decline to disrupt the status quo.[26] The judgment of the district court is AFFIRMED.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

. Berezowsky v. Ojeda, 765 F.3d 456 (5th Cir. 2014) [hereinafter Ojeda I], cert. denied, — U.S. -, 135 S.Ct. 1531, 191 L.Ed.2d 559 (2015).

. See id. at 459-65.

. Id. at 463-64. "The Hague Convention was adopted to address the problem of international child abductions during domestic disputes.” Id. at 465. "The Convention's central operating feature is the return remedy. When a child under the age of 16 has been wrongfully removed or retained, the country to which the child has been brought must ‘order the return of the child forthwith,’ unless certain exceptions apply.... A return remedy does not alter the pre-abduction allocation of custody rights but leaves custodial decisions to the courts of the country of habitual residence.” Abbott v. Abbott, 560 U.S. 1, 9, 130 S.Ct. 1983, 176 L.Ed.2d 789 (2010) (citations omitted).

. See Berezowsky v. Ojeda, No. 4:12-CV-03496, 2013 WL 150714 (S.D. Tex., Jan. 14, 2013),

. Ojeda I, 765 F.3d at 459. Judge Haynes dissented. Id. at 476 (Haynes, J., dissenting). We did not determine where PARB’s habitual residence actually was, nor did we take a position on the underlying custody dispute.

. Id. at 475-76.

. Demahy v. Schwarz Pharma, Inc., 702 F.3d 177, 181 (5th Cir. 2012),

. Id. at 182.

. Guy v. Crown Equip. Corp., 394 F.3d 320, 325 (5th Cir. 2004) (quoting Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 195 (1st Cir. 2004) and Bank One, Texas, N.A. v. F.D.I.C., 16 F.Supp.2d 698, 713 (N.D. Tex. 1998)).

. Demahy, 702 F.3d at 182 n.3; see United States v. Matthews, 312 F.3d 652, 657 (5th Cir. 2002) ("[L]aw of the case is not a jurisdictional rule, but a discretionary practice. ... [T]he so-called mandate rule ... is but a specific application of the general doctrine of law of the case.”); Tollett v. City of Kemah, 285 F.3d 357, 365 (5th Cir. 2002) ("A prior decision of this court will be followed without re-examination ... unless [among other things] the decision was clearly erroneous and would work a manifest injustice.”) (quoting United States v. Becerra, 155 F.3d 740, 752-53 (5th Cir. 1998)).

. Demahy, 702 F.3d at 181.

. See Tollett, 285 F.3d at 364 (a district court must "implement both the letter and the spirit of the mandate, taking into account the appellate court’s opinion and the circumstances it embraces”) (quoting United States v. Kikumura, 947 F.2d 72, 76 (3d Cir. 1991)); see also United States v. Bell Petroleum Servs., Inc., 64 F.3d 202, 204 (5th Cir. 1995) ("On a second appeal following a remand, this Court must interpret its earlier mandate 'reasonably and not in a manner to do injustice.’ ”) (quoting Mobil Oil Corp. v. Dep’t of Energy, 647 F.2d 142, 145 (Temp. Emer. Ct. App. 1981)); United States v. Kellington, 217 F.3d 1084, 1095 n.12 (9th Cir. 2000) (“[A] district court is not required to woodenly follow a mandate’s strict terms where patent injustice or absurdity would result.... [T]he rule of mandate is designed to permit flexibility where necessary, not to prohibit it.”).

.Rendon also makes a textual argument, claiming that the definition of "vacate,” i.e„ "to nullify or cancel; make void; invalidate,” requires undoing all practical effects of the vacated decision. But the sources he cites simply state that a vacated decision can be of no legal effect going forward, not that that decision’s real-world effects must be unwound. See Black’s Law Dictionary 1782 (10th ed. 2014); Falcon v. Gen. Tel. Co., 815 F.2d 317, 320 (5th Cir. 1987).

. Berezowsky also claims that Rendon’s claims on appeal are procedurally defaulted because he failed to timely challenge or seek clarification of our mandate. This begs the question. Rendon only would have had to challenge the mandate if it forbade the relief he now seeks. If it required that relief (as he contends) or even permitted it, then there was no need to challenge the mandate.

. 22 U.S.C. § 9001 etseq.

. See Chafin v. Chafin, — U.S. — , 133 S.Ct. 1017, 1028, 185 L.Ed.2d 1 (2013) (Ginsburg, J., concurring).

. Id. at 1024.

. In re A.L.C., 607 Fed.Appx. 658, 663 (9th Cir. 2015) (an appellate court has the inherent power to 'issue a re-return order); see Chafin, 133 S.Ct. at 1024 (“Jurisdiction to correct what had been wrongfully done must remain with the court so long as the parties and the case are properly before it, either in the first instance or when remanded to it by an appellate tribunal.’’) (quoting Nw. Fuel Co. v. Brock, 139 U.S. 216, 219, 11 S.Ct. 523, 35 L.Ed. 151 (1891)); Burns v. Bines, 189 Md. 157, 57 A.2d 188 (1948) (applying Brock in the child custody context); Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co., 249 U.S. 134, 145-46, 39 S.Ct. 237, 63 L.Ed. 517 (1919) (“It is one of the equitable powers, inherent in every court of justice so long as it retains control of the subject-matter and of the parties, to correct that which has been wrongfully done by virtue of its process.’’).

. Browning v. Navarro, 887 F.2d 553, 556 (5th Cir. 1989) (emphasis added) (quoting Morrow v. Dillard, 580 F.2d 1284, 1290 (5th Cir. 1978)); see Laitram Corp. v. NEC Corp., 115 F.3d 947, 952 (Fed. Cir. 1997) ("Although the district court cites much authority for the proposition that issues decided implicitly by courts of appeals may not be reexamined by tire district court, the rule is actually applicable only to those issues decided by necessary implication.”).

. Art Midwest Inc. v. Atl. Ltd. P'ship XII, 742 F.3d 206, 213 (5th Cir. 2014) (emphasis added) (quoting Gen. Universal Sys., Inc. v. HAL, Inc., 500 F.3d 444, 453 (5th Cir. 2007)).

. Quoting Black’s Law Dictionary, Berezowsky explains that “[b]y definition, to ‘dismiss’ is to 'send something away; specifically, to terminate (an action or claim) without further hearing, esp. before the trial of the issues involved.’ ” This is unilluminating, especially as Rendon did not seek another hearing.

. Our sister circuits disagree as to whether a mandate to dismiss precludes any other action. Compare Stamper v. Baskerville, 724 F.2d 1106, 1108 (4th Cir. 1984) ("Compliance with an order to relinquish jurisdiction necessarily precludes the lower court from taking any further action other than dismissal, for to do so would involve retaining jurisdiction.... Once an order to dismiss is received, any action by the lower court other than immediate and complete dismissal is by definition inconsistent with — and therefore a violation of — the order.”), with United States v. Kellington, 217 F.3d 1084, 1095 n.12 (9th Cir. 2000) (criticizing Stamper and stating that "a district court is not required to woodenly follow a mandate's strict terms where patent injustice or absurdity would result.... [T]he rule of mandate is designed to permit flexibility where necessary, not to prohibit it.”).
Rendon points out that in a similar Hague Convention case, the Western District of Texas interpreted a comparably worded mandate to require a re-return order. In Larbie v. Larbie, we "vacat[ed] the district court’s order [returning a child to his mother in England] and render[ed] judgment in [the father’s] favor,” without saying more. 690 F.3d 295, 312 (5th Cir. 2012). On remand, the Western District of Texas ordered that "the parties must immediately comply with the Fifth Circuit’s judgment and mandate ... [the mother] must return [the child] to the custody of the posses-sory parent, [the father].... ” Larbie v. Larbie, No. 5:11-cv-00160, Doc. 60 at 2 (W.D. Tex., Aug. 29, 2012). Larbie may be distinguishable, as our mandate in that case did not explicitly order dismissal. In any event, the Western District’s interpretation does not bind us.

.Barrett v. Thomas, 809 F.2d 1151, 1154 (5th Cir. 1987).

. Chafin v. Chafin, — U.S. -, 133 S.Ct. 1017, 1029, 185 L.Ed.2d 1 (2013) (Ginsburg, J., joined by Scalia and Breyer, JJ., concurring).

. In re A.L.C., 607 Fed.Appx. 658, 663 (9th Cir. 2015).

. We note, however, that our Ojeda I ruling has equipped Rendon to avoid paying Berezowsky’s considerable costs and fees below, as the district court had ordered. See Berezowsky v. Ojeda, No. 4:12-CV-03496, 2013 WL 150714, at *8 (S.D. Tex., Jan. 14, 2013) (awarding Berezowsky "reasonable expenses ... including court costs, legal fees, and the transportation costs related to the return of the child to Mexico”). Because the judgment underlying the order to pay Berezowsky has been vacated, Rendon can now move for relief from the order under Rule 60. See Am. Realty Trust, Inc. v. Matisse Partners, L.L.C., 2003 WL 23175440, at *3 n.5 (N.D. Tex. Dec. 15, 2003) (collecting cases).