# IN THE COURT OF APPEALS

## TWELFTH COURT OF APPEALS DISTRICT

## TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF A. H. S. AND A. Y. S., CHILDREN* | § | *APPEAL FROM THE 402ND* |
| | § | *DISTRICT COURT* |
| | § | *WOOD COUNTY, TEXAS* |

*OPINION*

C.M.S. (Father) appeals the trial court's order granting M.Y.C.S.'s (Mother) motion for enforcement seeking the "re-return" of minor children, A.H.S. and A.Y.S., from Israel to Texas. In eight issues, he argues that the trial court lacked subject matter jurisdiction and authority to issue such an order, should have deferred to Israeli court decisions, deviated impermissibly from the relevant appellate mandate, and failed to afford him due process. We modify the trial court's order and affirm as modified.

### BACKGROUND

Father is an Israeli citizen and former Israeli diplomat; Mother is a United States citizen and traveling nurse whose permanent residence is in Wood County, Texas. Father and Mother were married in the United States in 2015. Shortly thereafter, Mother became pregnant with twin daughters, A.H.S. and A.Y.S., conceived via in vitro fertilization with the use of a donor's eggs and Father's sperm. Father returned to Israel in February 2016, while Mother was pregnant with the twins. After returning to Israel, Father contacted Mother and told her they were no longer married under Jewish law because Father conducted a background check and believed Mother was not Jewish. Mother, thirty-two weeks pregnant, nonetheless traveled to Israel on a three-month tourist visa. Upon arrival in Israel, Father would not allow Mother into his home, so she

stayed in a Rabbi's basement. Because Mother had no place to live, she attempted to return to the United States, but the airlines would not let her fly due to her advanced pregnancy. While Mother was visiting a doctor to be cleared to fly, she went into labor and the twins were born on June 20, 2016 (approximately two weeks after Mother arrived in Israel). Father was not present for the birth of the children and did not see them for approximately sixteen months following their birth.[1]

On April 29, 2018, the Israeli government ordered Mother to leave Israel within fourteen days due to her expired visa. Mother obtained passports for the children through the American Embassy, and all three left Israel and returned to the United States in April 2018, where they stayed with Mother's parents in Wood County, Texas. In August of 2020 (more than two years after Mother and the twins returned to the United States), Father filed a petition for return of the children pursuant to the Hague Convention and the International Child Abduction Remedies Act (ICARA). On January 25, 2021, following a trial on the merits, the trial court entered an order granting Father's petition and ordered the return of the children to Israel. At an unspecified time shortly thereafter, Father returned to Israel with the twins. Mother moved for a stay of the trial court's order pending the outcome of an appeal, but the trial court did not rule on the motion because Father had already returned to Israel with the children.

Mother timely appealed the trial court's order, and in March 2022, this Court issued its opinion concluding that the children's habitual residence was the United States, reversing the judgment of the trial court, and rendering judgment denying Father's petition for return of the children. The Texas Supreme Court denied Father's subsequent petition for review, and this Court issued its mandate on December 2, 2022, which read in relevant part:

> "It is therefore ORDERED, ADJUDGED and DECREED by this Court that the judgment of the trial court in favor of Appellee, C.M.S., be, and the same is, hereby reversed and judgment rendered that the Appellee, C.M.S.'s, petition for return of the children be denied."

On December 12, Mother filed a "Motion for Enforcement, Clarification, and Re-Return," (the Motion) in the same cause of action, requesting that the trial court enforce the judgment denying Father's petition for return by ordering the twins be "re-returned" from Israel. The trial court set a hearing on the Motion for January 6, 2023. Father was personally served with a citation and notice of hearing on December 20. Father moved for a continuance of the

---

[1] On November 8, 2017, the parties signed an agreement to obtain a Jewish divorce; thereafter, Father met and began exercising his visitation periods with the children.

hearing because the scheduled hearing date fell on the Jewish Sabbath in Israel, but otherwise did not respond before the hearing date. Counsel for both parents appeared at the hearing on January 6. The trial court first heard argument from counsel and denied the motion for continuance, stating that the presence of the parties was not necessary where the hearing was not evidentiary in nature. The trial court then heard argument on and subsequently granted Mother's Motion and stated that the parties would appear again by Zoom for entry of the written order. On January 17, Father filed a response to the Motion containing several new arguments, as well as a declaration from one of his attorneys with several documents from Israeli courts attached. [2] On the morning of January 23, Father filed an amended response and declaration. Counsel for the parties appeared via Zoom later that day, wherein the trial court entered its written order requiring Father to surrender the twins to Mother in Israel so that she could return with them to the United States. This appeal followed.

### SUBJECT MATTER JURISDICTION AND TRIAL COURT'S AUTHORITY TO ORDER RE-RETURN

Father contends in his second and third issues that the trial court lacked subject matter jurisdiction, statutory authority, and common-law authority to order the re-return of the children from Israel to the United States.[3] Father asserts in his fifth issue that the trial court's order deviated impermissibly from the mandate of this Court.

### Standard of Review and Applicable Law

A challenge to the trial court's jurisdiction is reviewed de novo. ***Tex. Dep't of Parks and Wildlife v. Miranda***, 133 S.W.3d 217, 228 (Tex. 2004). Although a Texas court's jurisdiction over the subject matter of and the parties to a suit is generally exhausted after a judgment becomes final, that trial court has an affirmative duty to enforce its judgment, and the court retains statutory and inherent authority to do so. *See* TEX. R. CIV. P. 308; ***In re Crow–Billingsley***

---

[2] During the pendency of the previous appeal, following Father's return to Israel with the twins pursuant to the trial court's original judgment, Mother filed her own petition for return under the Hague Convention in the Israeli court system. The Supreme Court of Israel ultimately ruled on November 17, 2022, upholding the lower court's denial of Mother's petition.

[3] Father's first issue, "Whether the Trial Court properly granted Appellee's Motion for Enforcement, Clarification and Re-Return," appears to be a general "catch-all" encompassing the seven issues that follow. Father's brief contains no argument or citations to authority directed specifically at this issue. The failure to brief, or to adequately brief, an issue by an appellant effects a waiver of that issue on appeal. ***General Servs. Comm'n v. Little-Tex Insulation Co., Inc.***, 39 S.W.3d 591, 598 n.1 (Tex. 2001); TEX. R. APP. P. 38.1(i) ("[t]he brief must contain a clear and concise argument for the contentions made, with appropriate citations to the authorities...."). At oral argument, Father's counsel acknowledged the first issue was a summary of the following seven issues and need not be addressed specifically. To the extent necessary, we overrule Father's first issue.

3

*Air Park, Ltd.*, 98 S.W.3d 178, 179 (Tex. 2003); *BancorpSouth Bank v. Prevot*, 256 S.W.3d 719, 724 (Tex. App.—Houston [14th Dist.] 2008, no pet.). "When an appellate court . . . renders a judgment the trial court should have rendered, that judgment becomes the judgment of both courts as to those issues." *Bramlett v. Phillips*, 359 S.W.3d 304, 310 (Tex. App.—Amarillo 2012), *aff'd*, 407 S.W.3d 229 (Tex. 2013); *Cook v. Cameron*, 733 S.W.2d 137, 139 (Tex. 1987). And when an appellate court renders the judgment the trial court "should have rendered," that judgment may be enforced as in any other case. TEX. R. APP. P. 51.1(b). However, a trial court may not issue an order that is inconsistent with its original judgment or that otherwise constitutes a material change in the "substantive adjudicative portions of the judgment" after its plenary power has expired. *In re Fluid Power Equip., Inc.*, 612 S.W.3d 130, 134-35 (Tex. App.—Houston [14th Dist.] 2020, orig. proceeding); *see also Reynolds v. Harrison*, 635 S.W.2d 845, 846 (Tex. App.—Tyler 1982, writ ref'd).

The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980 (the Hague Convention), establishes legal rights and procedures for the prompt return of children who have been wrongfully removed or retained. 22 U.S.C.A. § 9001. ICARA, the federal statute setting forth procedures for implementing the Hague Convention in the United States, grants concurrent original subject matter jurisdiction over claims thereunder to state courts and federal district courts. *Id.* § 9003(a).

## Analysis

Father argues both the trial court and this court did not have authority to order return of the children after we delivered our opinion reversing the trial court's grant of Father's petition. Though Father acknowledges that he subjected himself to the personal jurisdiction of the trial court by the filing of his petition, he claims issuance of a re-return order was impermissible because (1) neither the Hague Convention nor ICARA addresses or provides a procedural mechanism for re-return of the children after an appellate court reverses an improperly granted petition and (2) a re-return order is an impermissible de facto custody determination. We disagree.

Though Father is correct that the Hague Convention and ICARA do not specifically address the re-return of children, that is not the same as the statute prohibiting re-return of the children and fails to acknowledge the inherent authority of trial courts and appellate courts to

enforce their judgments. Further, nothing in the Texas Family Code prohibits issuance of re-return orders.

When this Court rendered its judgment on appeal denying Father's petition for return, our judgment became the judgment of the trial court as well (relating back to the date of the original return order). *See Bramlett*, 359 S.W.3d at 310; *In re S.S.G.*, 208 S.W.3d 1, 3-4 (Tex. App.—Amarillo 2006, pet. denied). Thereafter, the trial court had not only the inherent authority, but the affirmative duty to "cause its judgment . . . to be carried into execution." *See* TEX. R. CIV. P. 308; *BancorpSouth Bank*, 256 S.W.3d at 724. Moreover, the trial court retained jurisdiction to enforce its judgment. *In re Crow–Billingsley Air Park, Ltd.*, 98 S.W.3d at 179. The judgment concluded that the twins' habitual residence was the United States, and therefore reversed the trial court's finding that Father was permitted to remove them to Israel (although he had already done so in the intervening months). The trial court's issuance of a re-return order was therefore a proper method for the court to "undo" the impact of its original ruling and give effect to the operative judgment, and both Texas and federal courts addressing the availability of re-return have opined thusly. *See Chafin v. Chafin*, 568 U.S. 165, 174, 133 S. Ct. 1017, 1024, 185 L. Ed. 2d 1 (2013) (a re-return order is "typical appellate relief" requiring that the lower court "undo what it has done").

Texas courts addressing the issue of re-return have ruled that an appellate court's reversal of a trial court's grant of a petition for return of a child under the Hague Convention at minimum authorizes (if not requires) an order for the child's return to the United States. *See In re J.G.*, 301 S.W.3d 376, 383 (Tex. App.—Dallas 2009, no pet.); *Velez v. Mitsak*, 89 S.W.3d 73, 84 (Tex. App.—El Paso 2002, no pet.) (clarified at 89 S.W.3d 84, 85). The appellate court in *J.G.* reversed the trial court's grant of Father's Hague Convention petition because it found the court's habitual residence determination incorrect and ordered the trial court to "order the return of the children to the jurisdiction of the court upon the terms and conditions she deems appropriate." *In re J.G.*, 301 S.W.3d at 383. Similarly, in *Velez*, the appellate court found that its reversal of the trial court's grant of Father's petition for return "necessitate[d]" the return of the child to the jurisdiction, even though they had already left the country subsequent to the trial court's initial order. *Velez*, 89 S.W.3d at 84. The appellate court later clarified its opinion and explicitly directed the trial court to "order the return of the child to the jurisdiction of the court upon the terms and conditions he deems appropriate." *Id.* at 85. Numerous federal courts,

including the Fifth Circuit Court of Appeals, have also affirmed the courts' authority to issue an order for re-return upon an appellate court's reversal of the lower court's grant of a petition for return of a child under the Hague Convention. *See, e.g.*, *Berezowsky v. Rendon Ojeda*, 652 F. App'x 249, 252-53 (5th Cir. 2016); *In re A.L.C.*, 607 F. App'x 658, 663 (9th Cir. 2015); *Redmond v. Redmond*, 724 F.3d 729, 747 (7th Cir. 2013); *Fawcett v. McRoberts*, 326 F.3d 491, 496 (4th Cir. 2003) (*abrogated on other grounds by* *Abbott v. Abbott*, 560 U.S. 1, 130 S. Ct. 1983, 176 L. Ed. 2d 789 (2010)); *Peyre v. McGarey*, No. CV-23-00350-PHX-DWL, 2023 WL 4474863, at *2 (D. Ariz. June 22, 2023) (slip op.); *Rodriguez Palomo v. Howard*, No. 1:19CV884, 2019 WL 9633647, at *2 (M.D.N.C. Dec. 17, 2019); *Escobar Villatoro v. Figueredo*, No. 8:15-CV-1134-T-36TBM, 2015 WL 12838861, at *2 (M.D. Fla. June 26, 2015).

Father cites no case law authority for his proposition that neither federal nor state courts have subject matter jurisdiction to issue re-return orders to enforce their judgments. The primary case Father relies upon for this argument, *Ohlander v. Larson*, does not stand for his position. 114 F.3d 1531, 1542 (10th Cir. 1997). In *Ohlander*, the issue before the court was not authority to issue a re-return order, but rather whether the district court denied a parent petitioner's motion to dismiss on improper grounds. *Id.* As such, it is not applicable to the issue before us—whether a trial court or appellate court has authority to issue a re-return order.

We further disagree that issuance of a re-return order is a custody determination prohibited by the Hague Convention and ICARA. Father availed himself to the personal jurisdiction of the trial court when he filed his petition for return of the children to Israel. When the trial court erroneously granted Father's petition and ordered the children be returned to Israel, it was not making a custody determination. Had the trial court denied the petition, the children would have remained in the United States while the substantive issues of conservatorship, possession, and support were being litigated. Our opinion and judgment did not make a custody determination, but only determined that the habitual residence of the children was in the United States, and the trial court erred in finding to the contrary. When the children are returned to the United States, the parties can proceed with the substantive issues regarding the children. Our opinion and judgment merely establish the forum where those proceedings are to take place.

Moreover, a conclusion in this case that courts in the United States (including the trial court) lack jurisdiction or authority to order re-return would be contrary to the great weight of authority from the courts that have already ruled on this issue. Such a conclusion would also

6

conflict, at least "to some degree," with one of the purposes of the Hague Convention, namely preventing parents from fleeing jurisdictions to find a more favorable judicial forum. *Chafin*, 568 U.S. at 179, 133 S. Ct. at 1027. A parent who obtained a return order would have incentive to exit the United States as soon as possible to render ineffectual any subsequent appellate reversal. *Id.* Without the possibility of effective relief once a child leaves the country, parents in Mother's situation could only seek a stay of the return order pending the outcome of an appeal, to prevent the child from leaving the United States at all. However, the United States Supreme Court has ruled that courts should *not* routinely grant a stay of return orders during the pendency of appeals in Hague Convention proceedings, as such stays would "conflict with the Convention's mandate of prompt return to a child's country of habitual residence." *Id.*, 568 U.S. at 178, 133 S. Ct. at 1026.[4]

Essentially, sustaining Father's argument on these issues would not only divest our judgment in the previous appeal of any effect, but also moot future appeals of return orders to this Court, because even a parent successful on appeal could not secure an order for a child's return to the United States. We decline to endorse such a result and conclude it was proper for the trial court to grant the Motion and issue the re-return order pursuant to its inherent authority to enforce its judgments. *See* TEX. R. CIV. P. 308; *In re A.L.C.*, 607 F. App'x at 663. Accordingly, we overrule Father's second and third issues.

**Scope of Mandate**

Whether a trial court's actions exceed the scope of an appellate mandate is also a jurisdictional challenge, which we review de novo. *See Matter of Est. of Spiller*, No. 04-22-00050-CV, 2023 WL 2733403, at *3 (Tex. App.—San Antonio Mar. 31, 2023, no pet.) (mem. op.) (citing *Miranda*, 133 S.W.3d at 226). When an appellate court reverses a lower court's judgment and *remands* the case to the trial court (that is, returns the case to the trial court for further proceedings), the trial court is authorized to take all actions that are necessary to give full effect to the appellate court's judgment and mandate.[5] *Phillips v. Bramlett*, 407 S.W.3d 229, 234

---

[4] Even if the losing party requests a stay of a return order, this may not prevent the child's removal from the jurisdiction—for example, in this case, Father removed the children to Israel before the trial court could consider Mother's motion for stay.

[5] Even if we had reversed and remanded in this case, the trial court is permitted some exercise of discretion in fulfilling the terms of the mandate. *Matter of Est. of Spiller*, No. 04-22-00050-CV, 2023 WL 2733403, at *3 (Tex. App.—San Antonio Mar. 31, 2023, no pet.) (mem. op.) (citing *Martin v. Credit Protection Ass'n, Inc.*, 824 S.W.2d 254, 255–56 (Tex. App.—Dallas 1992, writ dism'd w.o.j.)). Specifically, trial courts retain their jurisdiction

(Tex. 2013). However, as previously stated, where the appellate court reverses and *renders*, the appellate court's judgment becomes the judgment of both courts and is final and enforceable as in any other case. TEX. R. APP. P. 51.1(b); *Bramlett*, 359 S.W.3d at 310. Aside from the inherent authority of a trial court to enforce its *own* judgments, upon the trial court's receipt of an appellate court's mandate, the trial court has a mandatory, ministerial duty to enforce the appellate court's judgment by executing proper orders. TEX. R. APP. P. 51.1(b), 308; *Beyer v. Beyer*, No. 03-14-00178-CV, 2015 WL 6459595, at *2 (Tex. App.—Austin Oct. 22, 2015, no pet.) (mem. op.) (citing *Cook*, 733 S.W.2d at 139).

To the extent that Father argues that the trial court's order is inconsistent with this Court's judgment or constitutes a material change in the substantive adjudicative portions of the judgment, where an appellate mandate in a Hague Convention proceeding does not explicitly require nor forbid a re-return order, the lower court is not foreclosed from granting such relief. *Berezowsky*, 652 F. App'x at 252-53; *see In re Fluid Power Equip., Inc.*, 612 S.W.3d at 134-35. As discussed extensively *infra*, our determination that the twins' habitual residence is in the United States authorized an order returning the children to the jurisdiction of their habitual residence. *See Chafin*, 568 U.S. at 174, 133 S. Ct. at 1024; *Berezowsky*, 652 F. App'x at 252-53; *In re J.G.*, 301 S.W.3d at 383; *Velez*, 89 S.W.3d at 84.

We overrule Father's fifth issue.

## EFFECT OF ISRAELI COURT DECISIONS

Father argues in his fourth issue that the doctrine of international judicial comity requires us to defer to the decisions of the Israeli courts denying Mother's petition for return under the Hague Convention.

### Standard of Review and Applicable Law

Texas courts are bound to exercise jurisdiction vested in them by the Texas Constitution and cannot delegate their judicial prerogative where jurisdiction exists. *Masterson v. Diocese of Nw. Tex.*, 422 S.W.3d 594, 606 (Tex. 2013). However, in some circumstances, Texas courts may defer to the sovereignty of other states or foreign nations according to principles of comity. *See*

---

to perform "ministerial" duties collateral to and consistent with those mandates, including considering motions to enforce. *Schroeder v. LND Mgmt., LLC*, 446 S.W.3d 94, 97 (Tex. App.—Houston [14th Dist.] 2014) (citing *Madeksho v. Abraham, Watkins, Nichols & Friend*, 112 S.W.3d 679, 685 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)).

***K.D.F. v. Rex***, 878 S.W.2d 589, 593 (Tex. 1994). Comity is a doctrine grounded in cooperation and mutuality. ***Id.*** It "is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." ***Hilton v. Guyot***, 159 U.S. 113, 164, 16 S. Ct. 139, 143, 40 L.Ed. 95 (1895); *see **Hawsey v. La. Dep't of Social Servs.***, 934 S.W.2d 723, 726 (Tex. App.—Houston [1st Dist.] 1996, writ denied) ("Comity is a principle under which the courts of one state give effect to the laws of another state or extend immunity to a sister sovereign not as a rule of law, but rather out of deference or respect."). However, "comity is not a matter of right," and its application vests in the "sound discretion of the tribunal of the forum." ***Guimaraes v. Brann***, 562 S.W.3d 521, 537 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Courts in the United States may also "properly decline to extend comity to the foreign court's determination if it clearly misinterprets the Hague Convention, contravenes the Convention's fundamental premises or objectives, or fails to meet a minimum standard of reasonableness." ***Smedley v. Smedley***, 772 F.3d 184, 189 (4th Cir. 2014) (quoting ***Asvesta v. Petroutsas***, 580 F.3d 1000, 1014 (9th Cir. 2009)). An appellate court reviews a trial court's decision regarding an issue of comity for abuse of discretion. ***Griffith v. Griffith***, 341 S.W.3d 43, 54 (Tex. App.—San Antonio 2011, no pet.).

**Analysis**

The record shows that a total of three Israeli courts ruled on Mother's Hague Convention petition—the "Family Court," the District Court of Jerusalem, and the Supreme Court of Israel. Of these three rulings, only the judgment of the Supreme Court of Israel was before the trial court at the time it entered the re-return order, and only the original Hebrew version and translated version of that same judgment is before us now.

The Supreme Court of Israel's judgment centers on whether Father's retention of the twins in Israel (pursuant to the original trial court judgment) was a wrongful "abduction" under the Hague Convention that would be addressed via a return order from Israel's courts. The judgment ultimately affirmed the District Court's ruling that Father did not abduct the twins when he removed them from Texas and that no return order should issue. The Israeli courts placed great weight on the fact that the judgment of this Court did not expressly command Father to "re-return" the children from Israel to the United States. Now, conversely, Father appeals the

trial court's issuance of such an express order, an issue that was not before the Israeli courts.[6] More importantly, though, although it casts aspersions on the validity of this Court's habitual residence determination, the Supreme Court of Israel's judgment does not itself contain an express determination that the twins' habitual residence is in Israel, or anywhere other than the United States. Therefore, although a court in the United States is not required to extend judicial comity as a matter of right, we need not reach that analysis in this matter. Even presuming we extended comity to the Supreme Court of Israel's resolution of *Mother's* Hague Convention petition filed there to this proceeding (focusing on *Father's* Hague Convention petition filed in Texas), it would not impact our resolution of the matter currently before us. To the extent applicable, the trial court did not abuse its discretion in declining to extend comity to the decision of the Supreme Court of Israel. *See* **Griffith**, 341 S.W.3d at 54.

As for Father's argument that we should defer to the Israeli custody determination from 2021, this proceeding is not and cannot be a custody determination—in a proceeding under ICARA, we are not permitted to address an underlying custody dispute. 22 U.S.C.A. § 9001(b)(4); *see also* **Redmond**, 724 F.3d at 740-41. The Texas Family Code provides a procedure by which a party may register and enforce foreign custody determinations, and Father has not followed that procedure or directly requested enforcement from the trial court. TEX. FAM. CODE ANN. § 152.303, 152.305 (West 2023). Although we previously determined the twins' habitual residence is the United States, meaning that Father could have brought a proceeding for enforcement of the Israeli custody decision in a Texas court at any time thereafter, he has not done so to date.[7] *See* **Ozaltin v. Ozaltin**, 708 F.3d 355, 359 (2d Cir. 2013) ("The [Hague]

---

[6] Moreover, the interpretation of the effect of this Court's reversal contained in the Supreme Court of Israel's judgment runs contrary to established Texas law. The effect of an appellate court's reversal of a trial court's decision is to nullify the judgment of the trial court, leaving it as if it had never been rendered. **In re S.S.G.**, 208 S.W.3d 1, 3-4 (Tex. App.—Amarillo 2006, pet. denied). However, the Supreme Court of Israel ruled that "it should not be determined that the judgment on appeal in Texas retroactively canceled the authority of the respondent to return the minors to Israel, following the judgment of the trial court in Texas." It further rendered its decision specifically "in the absence of a determination in the judgment on appeal in Texas regarding retroactive cancellation as stated."

[7] Even if we were permitted to examine the underlying custody dispute herein, Father did not assert before the trial court, and does not assert now, any argument as to the factors set forth in Section 152.303 that would compel a Texas court to "recognize and enforce" the 2021 child custody determination (such as whether that determination was made under factual circumstances meeting the jurisdictional standards of the chapter), and has therefore waived any such argument in this appeal. TEX. FAM. CODE ANN. § 152.303 (West 2023); TEX. R. APP. P. 33.1; 38.1(i).

Convention focuses solely on whether a child should be returned to her country of habitual residence for custody proceedings, not on resolving any underlying custody dispute.").

We overrule Father's fourth issue.

**SUFFICIENCY OF MOTION**

Father asserts in his sixth and seventh issues that the trial court erred in granting the Motion because it does not comply with the pleading requirements of Texas Family Code Section 157.002 and Texas Rule of Civil Procedure 47.

**Applicable Law**

The Texas Supreme Court has stressed that we examine the substance of a filing to determine the relief sought, not merely the form or title of a document. *In re Interest of J.Z.P.*, 484 S.W.3d 924, 925 (Tex. 2016) (per curiam); *see Ryland Enter., Inc. v. Weatherspoon*, 355 S.W.3d 664, 666 (Tex. 2011) (per curiam) (stating that "courts should acknowledge the substance of the relief sought despite the formal styling of the pleading"); *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980) ("We look to the substance of a plea for relief to determine the nature of the pleading, not merely at the form of title given to it."). The general test to determine if a pleading constitutes a suit to enforce a prior judgment, as opposed to a new suit, is whether the suit seeks to litigate new issues and controversies not attempted to be litigated in the prior suit. *Capps v. Known & Unknown Heirs of Foster*, No. 10-18-00329-CV, 2019 WL 3955832, at *3 (Tex. App.—Waco Aug. 21, 2019, pet. denied) (mem. op.) (citing *New Jersey Bank v. Knuckley*, 637 S.W.2d 920, 921 (Tex. 1982)).

Rule 47 sets forth the requirements for a party to state a new claim for relief. TEX. R. CIV. P. 47. Section 157.002(a) of the Family Code sets forth the requirements for motions for enforcement of a temporary or final order in a suit affecting the parent-child relationship. TEX. FAM. CODE ANN. § 157.002(a) (West 2023).

**Analysis**

Father contends that Mother's pleading requesting a re-return order is not a motion but rather an original pleading, and therefore subject to the pleading requirements of Rule 47 requiring inclusion of specified information. *See* TEX. R. CIV. P. 47(b). He bases this argument on the format of the citation issued by the district clerk when Mother served the pleading, which

11

indicates that Father was served with a new lawsuit, as well as language about the applicable level of discovery and objection to the assignment of an associate judge in the Motion itself. But a clerical error by the district clerk in the form of a citation does not alter the substance of the underlying document served and cannot transform a motion into a new cause of action. *See **In re Interest of J.Z.P.***, 484 S.W.3d at 925. In reviewing the substance of the Motion, several factors indicate that it is *not* an original pleading instituting a new cause of action, and therefore not subject to Rule 47. We note that Mother filed the Motion in an existing case, and entitled it "Motion for Enforcement, Clarification, and Re-Return." Further, the Motion does not purport to assert any new causes of action. Rather, the Motion asks for an order implementing and enforcing the judgment previously rendered by this Court and the trial court by granting re-return of the children.

The goal of proceedings under the Hague Convention is to determine where jurisdiction over a custody dispute is properly placed, namely the habitual residence of the child, and ensure the return of the child in question to that proper jurisdiction for said custody proceedings. *See **Barzilay v. Barzilay***, 536 F.3d 844, 850 (8th Cir. 2008); ***Yang v. Tsui***, 416 F.3d 199, 201 (3d Cir. 2005). In the previous appeal of this case, we determined that the twins' habitual residence is the United States but did not explicitly order that the children be physically returned there. ***Int. of A.Y.S.***, No. 12-21-00074-CV, 2022 WL 868046, at *11 (Tex. App.—Tyler Mar. 23, 2022, pet. denied) (mem. op.). The Motion seeks only to give effect to the judgment rendered by this Court and the trial court denying Father's petition for return through an order requiring the children be returned to the United States (or alternatively, an explanation as to the true effect of the judgment if not to support a re-return order). The Motion does not attempt to litigate any new issues or controversies or re-litigate any previously determined issues, but rather asks that the trial court provide the relief necessitated by our reversal of the trial court's habitual residence finding, namely a re-return order. *See **Velez***, 89 S.W.3d at 84; ***Capps***, 2019 WL 3955832 at *3. We therefore conclude that the Motion is not subject to the requirements of Rule 47, and the trial court did not erroneously grant the Motion despite the alleged absence of any such requirements.

Alternatively, Father argues that as a motion for enforcement, the Motion is subject to the requirements of Section 157.002(a) of the Family Code. The Texas Family Code states (in the subchapter codifying the Uniform Child Custody Jurisdiction and Enforcement Act): "Under this subchapter a court of this state *may* enforce an order for the return of the child made under the

Hague Convention on the Civil Aspects of International Child Abduction *as if* it were a child custody determination." TEX. FAM. CODE ANN. § 152.302 (West 2023) (emphasis added). Further, Chapter 157 itself provides, "A motion for enforcement as provided in this chapter *may* be filed to enforce any provision of a temporary or final order rendered in a suit." *Id*. § 157.001(a) (West 2023) (emphasis added). The parties in this case appear to presume that this means the Motion must be controlled by Section 157.002(a), and thus subject to the pleading requirements therein. However, when used in a statute, the word "may" creates discretionary authority, but does not impose a duty. TEX. GOV'T CODE ANN. § 311.016 (West 2023). And as explained in more detail *infra*, a Texas court generally retains statutory and inherent authority to enforce its judgments. *See* TEX. R. CIV. P. 308; *In re Crow–Billingsley Air Park, Ltd.*, 98 S.W.3d at 179. The trial court was not bound to determine the Motion under Chapter 157 but could instead rely on and assert its inherent authority (and affirmative duty) to enforce its prior judgment. The trial court did not err by granting the Motion in the absence of any of the requirements set forth in Section 157.002(a).

Accordingly, we overrule Father's sixth and seventh issues.


## PROCEDURAL DUE PROCESS

Father argues in his eighth issue that he was denied due process because the trial court did not provide him adequate opportunity to respond to the Motion.

### Applicable Law

The Due Process Clause of the Fifth Amendment provides that no person shall "be deprived of life, liberty or property without due process of law." U.S. CONSTITUTION, art. V. Procedural due process is examined in two steps: first, we must determine whether a litigant has been deprived of an existing liberty interest, and second, we must determine whether the procedures attendant upon the deprivation of the liberty interest were constitutionally sufficient. *Velez*, 89 S.W.3d at 83 (citing *Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L.Ed.2d 506 (1989)). Courts have consistently held that parents have a fundamental liberty interest in the custody of their children. *Id.* (collecting cases). In determining whether the procedures by which a litigant was deprived of his liberty interest were sufficient, we examine whether the litigant was granted an opportunity to be heard at a meaningful time and in a meaningful manner. *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L.Ed.2d 62

(1965). And ICARA provides that a litigant shall receive notice "in accordance with the applicable law governing notice in interstate child custody proceedings." 22 U.S.C. § 9003(c). Courts interpreting this provision in the context of petitions under the Hague Convention have found the "applicable law" to be the federal Parental Kidnapping Prevention Act (PKPA) as well as the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). *Velez*, 89 S.W.3d at 84-5. And both the PKPA and the UCCJEA provide for "reasonable notice and opportunity to be heard," meaning a hearing at which both sides are heard. 28 U.S.C.A. § 1738A(e); TEX. FAM. CODE ANN. § 152.205 (West 2023).

## Analysis

Father contends that he was denied due process because he received insufficient notice of the non-evidentiary hearing on Mother's Motion. However, the matter currently before the Court, the Motion, does not itself implicate the deprivation of Father's liberty interest in the custody of the children. Rather, this proceeding exists only to enforce, and not re-litigate, the judgment rendered at the conclusion of the *previous* proceeding, which implicated a liberty interest by determining (if only temporarily) the correct physical location of the twins. Although any such argument would now be untimely, Father does not argue that he received insufficient notice of the previous proceeding (in which this Court determined that the twins' habitual residence was the United States and denied his petition for their return) under the applicable statutes. Nor does he argue that he lacked an opportunity to be heard, as the trial court held a trial on the merits of his petition, which he attended and at which he presented evidence. He also exercised his right to appeal to both this Court and the Texas Supreme Court.

Even assuming *arguendo* that the instant enforcement proceeding did somehow involve re-litigating Father's petition, and thus implicated Father's liberty interest in custody of the twins, he received both the notice required by Texas law and an opportunity to be heard. Generally, an application to the court for an order and notice of any hearing thereon must be served upon all other parties not less than three days before the time specified for the court proceeding. TEX. R. CIV. P. 21(b). Father was personally served with the Motion and notice of hearing on December 20, 2022. And although he was not personally present, Father was represented by counsel at the January 6 hearing, and Father's counsel presented extensive argument against the relief requested in the Motion. Moreover, Father was able to file a written response to the Motion before the trial court entered its judgment. We conclude that Father

14

received constitutionally sufficient procedural due process in this matter, and consequently overrule his eighth issue.

## DISPOSITION

Having overruled each of Father's issues, we conclude that the trial court correctly ordered the return of A.H.S. and A.Y.S. from Israel to the United States. However, the date and time set in the trial court's order for such return has long since expired. Further, we may not address the merits of the underlying custody dispute in this proceeding, and therefore modify the order of the trial court to remove the following sentence:

> IT IS ORDERED that [C.M.S.] shall surrender the children subject of this suit to [M.Y.C.S.] at the courthouse located at Sha'arei Mishpat Street 1, Kiryat Ben-Gurion, Jerusalem, Israel at noon, on the 15th day of February, 2023.

In place of the deleted sentence, we substitute the following language:

> IT IS ORDERED that C.M.S. shall return the children subject of this suit, A.H.S. and A.Y.S., to the United States of America, and to the jurisdiction of the trial court, within 21 calendar days of the date an appellate mandate is issued in this proceeding, and be subject to any appropriate sanctions to be determined by the trial court if C.M.S. fails to timely return the children as directed.

As modified, we ***affirm*** the order of the trial court.

GREG NEELEY
Justice

Opinion delivered October 6, 2023.
*Panel consisted of Hoyle, J., Neeley, J., and Bass, Retired J. Twelfth Court of Appeals sitting by assignment.*

(PUBLISH)

15



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 6, 2023**

**NO. 12-23-00042-CV**

**IN THE INTEREST OF A. H. S. AND A. Y. S., CHILDREN**

Appeal from the 402nd District Court
of Wood County, Texas (Tr.Ct.No. 2020-394)

THIS CAUSE came to be heard on the appellate record, briefs filed herein, and oral argument, and the same being considered, it is the opinion of this court that there was no error in the judgment of the court below. Because the date and time in the trial court's order for return has expired, in accordance with this court's opinion of this date, the order of the trial court is **modified** as follows: We **DELETE** that portion of the trial court's order which states:

> IT IS ORDERED that [C.M.S.] shall surrender the children subject of this suit to [M.Y.C.S.] at the courthouse located at Sha'arei Mishpat Street 1, Kiryat Ben-Gurion, Jerusalem, Israel at noon, on the 15th day of February, 2023.

In its place, we **INSERT** the following sentence:

> IT IS ORDERED that C.M.S. shall return the children subject of this suit, A.H.S. and A.Y.S., to the United States of America, and to the jurisdiction of the trial court, within 21 calendar days of the date an appellate mandate is issued in this proceeding, and be subject to any appropriate sanctions to be determined by the trial court if C.M.S. fails to timely return the children as directed.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below is **AFFIRMED** as modified, all costs of this appeal are assessed against Appellant C.M.S., and that this decision be certified to the court below for observance.

Greg Neeley, Justice.

*Panel consisted of Hoyle, J., Neeley, J., and Bass, Retired J. Twelfth Court of Appeals sitting by assignment.*